UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SHANE CLENDENIN,

                Plaintiff,               Case No. 1:22-cv-996

v.                                  Honorable Ray Kent

CHAD HUNT et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a county jail inmate under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hunt, Abbott, Shannon, Jorriy, Drew, Ditz, Kelly, and Rhodes. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims for failure to protect premised upon the July 14, 2022, fight with Inmate Ellis, Fourteenth Amendment claims of inadequate medical care, excessive force, and unconstitutional conditions of confinement, claims for First Amendment retaliation, and claims related to Defendants' failures to respond to Plaintiff's kites and verbal requests. Plaintiff's Fourteenth Amendment claims for failure to protect against Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, Miles, and Pentland premised upon the May 31, 2022, attack by Inmate Ellis, and against Defendant Gilbert premised upon the July 13, 2022, fight with Inmate Blashill remain. Plaintiff's motions to appoint counsel will be denied.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated in the Van Buren County Jail in Paw Paw, Van Buren County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following Van Buren County Jail staff: Lieutenant/Jail Administrator Chad Hunt, Sheriff Daniel Abbott, Sergeant Mike Shannon, Sergeant Heath Jorriy, Corrections Officers Unknown Tesser, Unknown Dipwizinski, Unknown Bingamen, Unknown Weekly, Unknown Gilbert, Unknown Kelly, Unknown Rhodes, and Unknown Miles, Sergeant Unknown Drew. (Compl., ECF No. 1, PageID.2–4.) Plaintiff also sues Van Buren County Sheriff's Department/Jail Detective Greg Pentland and Michigan State Police Sergeant Jim Ditz. (*Id.*, PageID.4.)

Plaintiff alleges that, on May 10, 2022, Plaintiff began submitting kites to Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, and Miles, explaining that Plaintiff was being harassed by and receiving death threats from Inmate Paul Ellis. (*Id.*, PageID.5.) The foregoing Defendants sent Plaintiff's kites to Defendants Pentland and Ditz. (*Id.*)

On May 29, 2022, Plaintiff was told by an unidentified person to "quit [writing] kites." (*Id.*) On each of the two following days, Plaintiff verbally told Defendants Tesser and Bingamen that he wanted to press charges against Inmate Ellis. (*Id.*) Plaintiff's kites and verbal requests were ignored. (*Id.*)

Plaintiff was stabbed by Inmate Ellis on May 31, 2022. (*Id.*, PageID.5, 6.) Afterward, Plaintiff was pulled into the hall and given a Band-Aid by Defendants Tesser, Miles, and Kelly. (*Id.*, PageID.5.)

Plaintiff states that, on June 1, 2022, Plaintiff "started trying to notify Sheriff Daniel Abbott." (*Id.*) Defendant Abbott spoke with Plaintiff on June 3, 2022. (*Id.*) At that time, Plaintiff

was under the impression that Defendant Abbott would release Plaintiff from jail on a personal recognizance bond; however, Plaintiff was not released. (*Id.*)

On June 2, 8, 22, and 27, 2022, Plaintiff asked unidentified persons for medical and counseling services for "nightmares and severe emotions, thoughts about fearing for [his] life". (*Id.*, PageID.6.) Plaintiff was seen by an unnamed doctor (not a party) on July 5, 2022, who told Plaintiff that nothing could be done for him. (*Id.*) Plaintiff told the doctor that Plaintiff could not sleep because of noises caused by Defendant Rhodes' slamming of doors and jingling of keys. (*Id.*) Plaintiff alleges that Defendant Rhodes engaged in these actions intentionally "because of the information [Plaintiff] gave CMH was leaked out." (*Id.*) On July 5 and 13, 2022, Plaintiff "continued [writing] kites to" Defendants Hunt and Abbott but did not receive a reply. (*Id.*)

On July 13, 2022, Inmate Mike Blashill was assigned to Plaintiff's cell and began threatening Plaintiff. (*Id.*) When Plaintiff told Defendant Gilbert about Inmate Blashill's threats, Defendant Gilbert did nothing. (*Id.*) Plaintiff fought with Inmate Blashill on July 14, 2022, and was taken out of his cell and placed in "the hole." (*Id.*)

Inmate Ellis, who had previously stabbed Plaintiff, was also in the hole at the time that Plaintiff was placed there. (*Id.*) Plaintiff fought with Inmate Ellis, which resulted in Plaintiff being "thrown to the ground and cuffed and moved to a cell in booking by Mike Shannon." (*Id.*) Plaintiff received a ticket for fighting and was given "21 days from Sgt. Doroe" (not a party). (*Id.*, PageID.7.) Plaintiff then spent 10 days without a shower, change of clothes, mat, or blanket, and with other inmates' blood on him. (*Id.*) He contracted a staph infection as a result. (*Id.*)

Plaintiff states that, as of the filing of his complaint, Plaintiff was still in the segregation unit. (*Id.*) Unidentified individuals continue to ignore Plaintiff's kites and refuse to give Plaintiff information or reports regarding the incidents described in Plaintiff's complaint. (*Id.*)

## II.     Motions to Appoint Counsel

On February 8, 2023, Plaintiff sent the Court a letter requesting "the paperwork to get appointed counsel." (ECF No. 7) Plaintiff explained that he had requested copies of reports and "current MCL" from "some Sgts" but was told "no", and that the "situation . . . is not getting any better." (*Id.*, PageID.24.) The Court has construed Plaintiff's correspondence as a motion to appoint counsel. Subsequently, Plaintiff filed a second document titled, "motion to appoint counsel," in which he states: "For the motion to appoint counsel[,] [i]f granted to who ever it may be can you send phone number, address, name." (ECF No. 8, PageID.27.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Following service of Plaintiff's complaint, and in accordance with the Federal Rules of Civil Procedure and this Court's Standard Case Management Order, Plaintiff, like all litigants, will have the opportunity to conduct formal discovery to obtain those documents needed to prosecute his case. Plaintiff's motions to appoint counsel (ECF Nos. 7 and 8) will, therefore, be denied.

### III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liberally construed, it appears that Plaintiff seeks to bring Fourteenth Amendment claims of failure to protect, inadequate medical care, and excessive force, claims of First Amendment retaliation, and claims regarding Plaintiff's unanswered kites and verbal requests.

### A.    Defendants Jorriy and Drew

Plaintiff names Defendants Jorriy and Drew as Defendants; however, Plaintiff does not make any factual allegations against Defendant Jorriy or Defendant Drew in the body of his complaint. (*See generally* ECF No. 1.) It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Because Plaintiff fails to name Defendants Jorriy and Drew in the body of his complaint, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's claims against Defendants Jorriy and Drew will be dismissed.

B.      **Fourteenth Amendment – Failure to Protect**

Plaintiff alleges that Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, Miles, Pentland, Ditz, and Abbott failed to protect Plaintiff from other inmates while Plaintiff was a pretrial detainee[2] in the Van Buren County Jail. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees." *Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 27 (6th Cir. 2022) (citing *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016)).

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 726 (quoting *Farmer*, 511 U.S. at 834). Historically, to state a claim for failure to protect under the Fourteenth Amendment, an inmate would be required to satisfy the Eighth Amendment's deliberate indifference standard. *Id.* at 727. This required that an inmate demonstrate that he was incarcerated under conditions posing a substantial risk of harm on an objective level, and that the individual defendant was "aware of facts from which the inference could be drawn that a

---

[2] Van Buren County court records indicate that Plaintiff was a pre-trial detainee at the Van Buren County Jail at all times relevant to Plaintiff's remaining claims. MiCourt Case Search, https://micourt.courts.michigan.gov/case-search/ (select "Continue," select "36th Circuit Court," search "Clendenin" for "Last Name" and "Shane" for "First Name," select Case No. 2022-0000023782-FH; under "Charges," select "Show" (last visited Mar. 6, 2023). Plaintiff was convicted on February 1, 2023. *Id.*

substantial risk of serious harm exist," actually drew the inference, and consciously disregarded the objective risk. *Id*. at 726–27.

However, following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Sixth Circuit eliminated the subjective inquiry for a Fourteenth Amendment failure-to-protect claim in favor of a more objective test. *Westmoreland*, 29 F.4th at 729. Now, to state a claim for failure to protect, a pretrial detainee must allege facts to demonstrate that the defendant officer "act[ed] intentionally in a manner that put[] the plaintiff at substantial risk of harm, without taking reasonable steps to abate that risk, and by failing to do so actually cause[d] the plaintiff's injuries." *Id*.

Liberally construed, Plaintiff appears to raise three failure-to-protect claims: (1) failure to protect from harm by Inmate Ellis resulting in the May 31, 2022, stabbing; (2) failure to protect from harm by Inmate Blashill; and (3) failure to protect from harm by Inmate Ellis resulting in the July 13, 2022, fight. The Court will also address a general failure-to-protect claim against Defendant Abbott, to the extent pled.

### 1.     Inmate Ellis – May 31, 2022, Stabbing

Plaintiff claims that Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, and Miles were aware that Inmate Ellis had been threatening Plaintiff but did nothing other than notify Defendants Pentland and Ditz. (ECF No. 1, PageID.5.) Plaintiff claims that each of his kites and requests were ignored, and that, on May 31, 2022, Plaintiff was stabbed by Inmate Ellis. (*Id.*, PageID.5, 6.)

Taken as true and construed liberally, Plaintiff alleges sufficient facts to state a claim against Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, Miles, and Pentland. Plaintiff alleges that each of these Defendants worked within the Van Buren County Jail, (ECF No. 1, PageID.2–4), and was aware that Plaintiff was in danger, having received death threats from Inmate Ellis, (*id.*, PageID.4). According to Plaintiff, Defendants Tesser, Dipwizinski, Bingamen,

10

Weekly, Gilbert, Miles, and Pentland chose not to take any steps to address the threat of harm, ultimately leading to the May 31, 2022, stabbing by Inmate Ellis. Accordingly, Plaintiff's claims against these Defendants cannot be dismissed on screening.

However, Plaintiff fails to allege sufficient facts to state a claim against Defendant Ditz related to the threats from Inmate Ellis. Unlike the foregoing Defendants, Plaintiff does not allege that Defendant Ditz worked within the Van Buren County Jail or even for the Van Buren County Sheriff's Department. Plaintiff provides no indication that Defendant Ditz, a Michigan State Police Sergeant, had any authority to act within the Van Buren County Jail in a way that could have prevented harm to Plaintiff. Thus, it cannot be said that Defendant Ditz engaged in any intentional act that caused Plaintiff's injuries or that Defendant Ditz had any opportunity to take reasonable steps to prevent harm. The Court will therefore dismiss Plaintiff's claim against Defendant Ditz.

### 2. Inmate Blashill

Plaintiff appears to implicate only Defendant Gilbert in his claim regarding harm caused by Inmate Blashill. Plaintiff alleges that he told Defendant Gilbert that he had been threatened by Inmate Blashill, Plaintiff's then-cellmate, after Inmate Blashill was moved back to Plaintiff's cell on July 13, 2022. (*Id.*, PageID.6.) Taken as true, this is sufficient to put Defendant Gilbert on notice of a threat to Plaintiff's safety. Plaintiff then alleges that despite telling Defendant Gilbert about Inmate Blashill's threats, Defendant Gilbert did nothing to protect Plaintiff or otherwise prevent the harm that ultimately ensued when, on July 14, 2022, Plaintiff was involved in a fight with Inmate Blashill. (*Id.*) Like Plaintiff's claims against Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, and Miles, Plaintiff's claim for failure to protect against Defendant Gilbert cannot be dismissed on screening.

### 3.     Inmate Ellis – June 13, 2022, Fight

Plaintiff alleges that, despite his earlier complaints about Inmate Ellis and the stabbing incident, Plaintiff was placed in the hole with Inmate Ellis on July 14, 2022, resulting in another fight. (*Id.*) However, Plaintiff does not identify the individual or individuals responsible for placing Plaintiff in the hole with Inmate Ellis, and Plaintiff does not allege that any of the named Defendants were aware that Plaintiff would be placed in the hole with Inmate Ellis but failed to take corrective action.

No matter how indulgently the Court reads Plaintiff's complaint, it remains Plaintiff's obligation to attribute particular factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). When a plaintiff "fail[s] to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights," the complaint fails to state a claim for relief. *Frazier*, 41 F. App'x at 764. Because Plaintiff fails to allege that any named Defendant was aware that Inmate Ellis was in the hole, was aware that Inmate Ellis posed a threat to Plaintiff, and was personally involved in the decision to place or to leave Plaintiff in the hole, the Court will dismiss any Fourteenth Amendment claim for failure to protect premised upon this incident.

### 4.     Claim Against Defendant Abbott

It is unclear whether Plaintiff intends to bring a claim against Defendant Abbott for failure to protect. Plaintiff alleges that, beginning on June 1, 2022, Plaintiff "started trying to notify Sheriff Daniel Abbott;" however, Plaintiff does not describe the nature of his attempted notifications to

Defendant Abbott. (ECF No. 1, PageID.5.) On June 3, 2022, Plaintiff finally spoke with Defendant Abbott but, again, Plaintiff does not describe what was discussed. (*Id.*) Finally, Plaintiff claims that, based upon his conversation with Defendant Abbott, Plaintiff got the impression that Plaintiff would be released on a personal recognizance bond with a tether, but that did not happen. (*Id.*) Although Plaintiff remained in jail where he was subsequently harmed by Inmates Blashill and Ellis, Plaintiff cannot maintain a claim for failure to protect against Defendant Abbott.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). "[A]n after-the-fact approval of an officer's conduct cannot logically be the moving force behind the constitutional violation." *Sherrod v. Williams*, No. 3:14-CV-454, 2019 WL 267175, at *25 (S.D. Ohio Jan. 15, 2019) (citing *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013)).

Plaintiff fails to allege any facts that would show that Defendant Abbott was personally involved in the alleged violations of Plaintiff's constitutional rights. There is nothing in Plaintiff's complaint to allow this Court to infer that Defendant Abbott was aware of the threat to Plaintiff's safety by Inmates Blashill and Ellis before harm occurred such that it could be said that Defendant Abbott acted intentionally in failing to take reasonable measures to avoid a substantial risk to Plaintiff's safety. *See Westmoreland*, 29 F.4th at 729. And there is no indication that Defendant Abbott played any role in personally placing Plaintiff in the hole, knowing that Inmate Ellis was already there. Accordingly, the Court will dismiss any claim against Defendant Abbott for failure to protect.[3]

---

[3] Although not specifically pled by Plaintiff, to the extent that Plaintiff intended to bring a separate claim against Defendant Abbott for refusing to release Plaintiff on a personal recognizance bond, that claim would likewise fail. A criminal court, not a county sheriff, is vested with the sole authority to order the release of a pretrial detainee on personal recognizance. Mich. Ct. R. 6.106. Therefore, Plaintiff has not alleged any facts to indicate that Defendant Abbott "act[ed] intentionally" in not releasing Plaintiff or that release—which Defendant Abbott had no power to order—would have been a "reasonable step" that Defendant Abbott could have taken to avoid a risk of harm to Plaintiff. *See Westmoreland*, 29 F.4th at 729.

### C.       Fourteenth Amendment – Inadequate Medical Care

Plaintiff alleges that, after being stabbed by Inmate Ellis on May 31, 2022, Plaintiff was pulled into the hall and given only a Band-Aid by Defendants Tesser, Miles, and Kelly, "which was the extent of [Plaintiff's] medical care for the incident." (ECF No. 1, PageID.5–6.) He also claims that, in June, Plaintiff requested medical and counseling services for recurring nightmares and "severe emotions" but was not provided with the same until July 5, 2022. (*Id.*, PageID.6.) Given the liberal construction afforded to *pro se* litigants, the Court will address each of Plaintiff's allegations as a claim of inadequate medical care.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted).

> The Eighth and Fourteenth Amendments are violated "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety."

*Id.* (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

Until recently, the Sixth Circuit analyzed claims of deliberate indifference by pretrial detainees and convicted prisoners "under the same rubric." *Brawner v. Scott County, Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). A plaintiff was required to demonstrate both that "the alleged deprivation of medical care was serious enough to violate the Constitution" on an objective level, and that the defendant subjectively "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety . . . ." *Helphenstine v. Lewis Cnty., Ky.*, No. 22-5407, 2023 WL 1859890, at *4 (6th Cir. Feb. 9, 2023) (quoting *Griffith*, 975 F.3d at 567; *Farmer*, 511 U.S. at 837). However, following the Supreme Court's decision in *Kingsley*, the Sixth Circuit lowered the standard for the second prong of the deliberate-indifference test from actual knowledge to

recklessness. *Helphenstine*, 2023 WL 1859890, at *5. For a detainee to state a claim under the Fourteenth Amendment for inadequate medical care, the plaintiff must now plead facts to plausibly suggest (1) that he had a sufficiently serious medical need and (2) "that each defendant 'acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine*, 2023 WL 1859890, at *6 (quoting *Brawner*, 14 F.4th at 596).

### 1.      Treatment for Stabbing

With respect to Plaintiff's claim that he was given only a Band-Aid, the Court need not address the second prong of the Fourteenth Amendment test as Plaintiff has not met the first prong of demonstrating a sufficiently serious medical need.

To satisfy the first prong, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer*, 511 U.S. at 834 (1994). In other words, he must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* This first component is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not

visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

Plaintiff states that he was stabbed (ECF No. 1, PageID.5); however, Plaintiff's complaint is entirely devoid of facts related to *any* injury suffered as a result. As a result, Plaintiff fails to provide the Court with any facts that would allow the Court to infer that Plaintiff had a sufficiently serious medical need following Inmate Ellis' attack on May 31, 2022. In other words, there are not facts that would indicate that Plaintiff needed anything more than the Band-Aid provided. Because of this, no matter how liberally construed, Plaintiff's allegations regarding this incident fail to state a plausible claim for inadequate medical care.

## 2.    Treatment for Recurring Nightmares and Severe Emotions

Plaintiff also claims that he started asking for medical and counseling attention in June 2022 (ECF No. 1, PageID.6); however, Plaintiff does not identify the persons with whom he spoke. Plaintiff, therefore, does not identify who made the decision to delay Plaintiff's medical care. And, although Plaintiff claims that he "was told there was nothing that could be done for [him]" (*id.*), he does not identify the person who denied him treatment. The only individual noted by Plaintiff with respect to Plaintiff's medical care (or lack thereof) in June and July 2022, is an unidentified "CMH Dr," a non-party. (*Id.*) As discussed above, claims such as these, which fail to allege with any degree of specificity which of the named Defendants were personally involved in the alleged constitutional violation, fail to state a claim for relief. *See Frazier*, 41 F. App'x at 764.

### D.      Fourteenth Amendment – Excessive Force

Plaintiff alleges that, as a result of Plaintiff's fight with Inmate Ellis, Defendant Shannon threw Plaintiff to the ground and handcuffed Plaintiff, before moving Plaintiff to a cell in the booking area. (ECF No. 1, PageID.6.) The Court liberally construes this as raising a claim of excessive force.

Like Plaintiff's claim of inadequate medical care, Plaintiff's claim of excessive force is governed by the Fourteenth Amendment's Due Process Clause. *See Kingsley*, 576 U.S. at 392–93. In *Kingsley*, the Supreme Court confirmed that pretrial detainees cannot be subjected to "the use of excessive force that amounts to punishment," *id.* at 397–98 (quoting *Graham*, 490 U.S. at 395 n.10), precisely because they "cannot be punished at all," *id.* at 400. Therefore, when assessing a claim of excessive force by a pretrial detainee, a court is to ask whether the plaintiff shows "that the force purposefully or knowingly used against him was objectively unreasonable." *Id.* at 396–97. The inquiry is highly fact-dependent; it and must take into account the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* It should also account for "the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,'" *id.*, and defer when appropriate to "'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). The *Kingsley* Court further instructed:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*.

Considering the objective, fact-dependent standard set forth in *Kingsley*, the Court concludes that Plaintiff simply has not provided the Court with sufficient factual allegations to state an excessive force claim. In responding to a fight between Plaintiff and Inmate Ellis, Defendant Shannon allegedly threw Plaintiff to the ground and handcuffed him. However, Plaintiff has not provided the Court with any facts that would plausibly suggest that the force used by Defendant Shannon was more than reasonably necessary to detain Plaintiff and control the situation. Indeed, *Kingsley* recognizes that an offical, such as Defendant Shannon, has a legitimate interest in breaking up an inmate's fight with another inmate "to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 576 U.S. at 397. And, following *Kingsley*, the Sixth Circuit continues to recognize that "an official's decision to use force to control a prison disturbance is entitled to deference." *Ayala-Rosales v. Teal*, 659 F. App'x 316, 321 (6th Cir. 2016) 2016) (citing *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010)). Without any factual allegations that would plausibly suggest that Defendant Shannon's use of force was objectively unreasonable under the circumstances, the Court will dismiss Plaintiff's excessive force claim.

### E.  Fourteenth Amendment – Conditions of Confinement

Plaintiff claims that Defendant Rhodes subjected Plaintiff to slamming doors and jingling keys, causing Plaintiff to "fear for [his] life" and lose sleep. (ECF No. 1, PageID.6.) Plaintiff also alleges that, after receiving "21 days from Sgt. Doroe," Plaintiff "did 10 days with no shower no change of [clothes], no mat, no blanket on a concrete floor with blood from 2 inmates on [him]," causing Plaintiff to suffer a staph infection. (*Id.*, PageID.7.)

The Fourteenth Amendment protects a pretrial detainee from conditions of confinement that amount to "punishment" in the constitutional sense. *Griffith*, 975 F.3d at 570; *Bensfield v. Murray*, No. 4:21-cv-P104, 2022 WL 508902, at *2 (W.D. Ky. Feb. 18, 2022) (citing *Brawner*, 14

F.4th at 591). Though the Sixth Circuit has yet to articulate a precise standard for Fourteenth Amendment conditions-of-confinement claims following *Kingsley*, *Griffith*, 975 F.3d at 570, based upon existing precedent described above, a plaintiff must show "that [he or she] is incarcerated under conditions posing a substantial risk of serious harm" *Farmer,* 511 U.S. at 834, and that each defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine*, 2023 WL 1859890, at *6; *see also Westmoreland*, 29 F.4th at 728.

### 1.     Slamming Doors and Jingling Keys

"There is no doubt that '[e]xcessive noise in a prison can state a valid Eighth Amendment claim.'" *Kimball v. Bureau of Prisons*, No. 4:13CV225, 2013 WL 3098900, at *8 (N.D. Ohio June 19, 2013) (quoting *Green v. Strack*, No. 94–17214, 1995 WL 341544, at *1 (9th Cir. June 8, 1995)). Therefore, the Court does not doubt that such noise could similarly give rise to a claim under the Fourteenth Amendment. However, obnoxious noise, without more, is not a constitutional violation. *Grubbs v. Bradley,* 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982) (citation omitted).

Though the Sixth Circuit has altered the subjective prong of a claim of deliberate indifference under the Fourteenth Amendment following *Kingsley*, it has left intact the Eighth Amendment's objective prong. *Brawner*, 14 F.4th at 596; *see also Helphenstine*, 2023 WL 1859890, at *6; *Westmoreland*, 29 F.4th at 728. Therefore, it remains that Plaintiff must plead facts that not only show that the noise was objectionable to Plaintiff but that it posed a substantial risk of serious harm on an objective level. He has not done so.

On an objective level, cases finding an Eighth Amendment violation based on excessive noise have typically "involved incessant noise throughout the day and night, *which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss*." *Kimball*, 2013 WL 3098900, at *8 (emphasis added) (citing *Sterling v. Smith*, No. CV606–103,

2007 WL 781274, at *3 (S.D. Ga. Mar.8, 2007); *Antonelli v. Sheehan,* 81 F.3d 1422, 1433 (7th Cir. 1996); *Toussain v. McCarthy,* 597 F. Supp. 1388, 1410 (N.D. Cal.1984), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)). Here, however, Plaintiff's alleges only that the slamming and jingling noises were excessive to Plaintiff's sensibilities. Plaintiff does not allege any facts that would demonstrate that the noise levels were objectively "intolerable for prison confinement," *Rhodes*, 452 U.S. at 348, or that Defendant Rhodes created a noise so excessive or pervasive as to pose an objectively serious risk of hearing loss or pain, *see Kimball*, 2013 WL 3098900, at *8. The Court will therefore dismiss Plaintiff's claim for unconstitutional conditions of confinement based upon excessive noise.

### 2.    Conditions Leading to Staph Infection

As with many of Plaintiff's other claims, Plaintiff does not identify any named Defendant who was personally responsible for the alleged conditions—i.e., "10 days with no shower no change of [clothes], no mat, no blanket on a concrete floor with blood from 2 inmates"—that Plaintiff claims led to a staph infection. Plaintiff does not claim that any of the named Defendants created those conditions, or even that they were aware of the conditions but failed to take reasonable steps to abate the same. Accordingly, because Plaintiff fails allege that any of the named Defendants were involved in the conditions of his confinement that led to his staph infection, the Court will dismiss this claim for failure to state a claim upon which relief may be granted. *See Frazier*, 41 F. App'x at 764.

### F.    First Amendment – Retaliation

Plaintiff raises two claims of First Amendment retaliation. First, Plaintiff claims that, on May 10, 2022, Plaintiff began writing kites to Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, and Miles regarding threats from Inmate Ellis. (ECF No. 1, PageID.5.) On May 29, 2022, Plaintiff was told by an unidentified person to "quit writing kites." (*Id.*) Plaintiff then

verbally told Defendants Tesser and Bingamen that Plaintiff wanted to "press charges." (*Id.*) Plaintiff's kites and verbal requests were ignored. (*Id.*) Second, Plaintiff alleges that Defendant Rhodes intentionally slammed doors and jingled keys because the information that Plaintiff "gave CMH was leaked out." (*Id.*, PageID.6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The Court will address each of Plaintiff's claims in turn.

## 1.      Ignored Kites and Verbal Requests

With respect to Plaintiff's first retaliation claim, even assuming that Plaintiff's kites and verbal complaints regarding threats by Inmate Ellis were First Amendment protected activity, *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), Plaintiff fails to plead facts to demonstrate that Plaintiff was subjected to adverse action motivated, at least in part, by Plaintiff's protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "[a]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"
*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff merely alleges the ultimate fact of retaliation. Plaintiff does identify who told Plaintiff to "quit writing kites," and Plaintiff does not provide this Court with any facts that would allow the Court to infer that any of the named Defendants harbored retaliatory animus against Plaintiff, which then caused them to ignore Plaintiff's additional complaints. The Court concludes that Plaintiff's conclusory allegation of retaliation fails to state a claim.

### 2.    Defendant Rhodes

Plaintiff's claim against Defendant Rhodes fares no better. Plaintiff alleges that Defendant Rhodes intentionally jingled his keys and slammed doors in a manner that caused Plaintiff to lose sleep because "the information [that Plaintiff] gave CMH was leaked out." (ECF No. 1, PageID.6.) But Plaintiff does not identify the "information" given to CMH. Because Plaintiff does not identify the "information" he gave to CMH, Plaintiff does not set forth any facts from which the Court could infer that Plaintiff was engaged in First Amendment protected activity in providing the unknown "information." The Court will therefore dismiss Plaintiff's First Amendment retaliation claim against Defendant Rhodes.

23

### G.      Claims Regarding Unanswered Kites

Finally, Plaintiff contends that, at various times during his pretrial detention, Plaintiff's kites and verbal requests were ignored by Defendants. Any claim premised upon the lack of responses by Defendants fails for the following three independent reasons.

First, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct in failing to respond to Plaintiff's kites did not deprive Plaintiff of procedural due process in violation of the Fourteenth Amendment.

Second, any failure to respond to Plaintiff's kites did not violate Plaintiff's First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

24

Third, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been prevented from voicing his complaints through the jail's kite process, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by the same. Plaintiff therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).

In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants based upon a failure to respond to Plaintiff's kites.

## Conclusion

For the reasons detailed above, Plaintiff's motions to appoint counsel (ECF Nos. 7 and 8) will be denied.

Further, having conducted the review required by the PLRA, the Court determines that Defendants Hunt, Abbott, Shannon, Jorriy, Drew, Ditz, Kelly, and Rhodes will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims for failure to protect premised upon the July 14, 2022, fight with Inmate Ellis, Fourteenth Amendment claims of inadequate medical care, excessive force, and unconstitutional conditions

of confinement, claims for First Amendment retaliation, and claims related to Defendants' refusal to respond to Plaintiff's kites and verbal requests. Plaintiff's Fourteenth Amendment claims for failure to protect against Defendants Tesser, Dipwizinski, Bingamen, Weekly, Gilbert, Miles, and Pentland premised upon the May 31, 2022, attack by Inmate Ellis, and against Defendant Gilbert premised upon the July 13, 2022, fight with Inmate Blashill remain in the case.

An order consistent with this opinion will be entered.


Dated:   March 27, 2023                                    /s/ Ray Kent
                                                           Ray Kent
                                                           United States Magistrate Judge